UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.

MICHAEL MILLER,
*Defendant*.

No. 3:19-cr-123-13 (JAM)

### ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Michael Miller is a prisoner of the Federal Bureau of Prisons ("BOP"). In light of the rapidly spreading coronavirus ("COVID-19"), he moves under 18 U.S.C. § 3582(c)(1)(A)(i) to amend his sentence to "time served" due to "extraordinary and compelling reasons." I will deny the motion.

#### BACKGROUND

On November 12, 2019, I sentenced Miller principally to a term of 30 months after he pleaded guilty to conspiracy to distribute and to possess with intent to distribute heroin and cocaine. Docs. #290, 483. The sentence imposed was at the low end of the guideline imprisonment range. Doc. #255 at 27 (¶ 91). Miller is scheduled to be released on June 15, 2021.

Miller is 39 years old. Doc. #567 at 4. He has a history of asthma and uses an Albuterol inhaler, as confirmed by medical records that have been filed under seal. *Id.* at 12, 14, 17, 23-24; Doc. #565 at 4. In a letter attached to Miller's motion, Miller's fiancée reports that he experienced two asthma attacks while previously at Cheshire Correctional Institution ("Cheshire"). Doc. #565, Ex. A. According to Miller's medical records, Miller tested negative

1

for the SARS CoV-2 RNA on August 11, 2020, August 17, 2020, and August 24, 2020. Doc. #567 at 4-9.

Miller reports that his fiancée recently lost her job. Doc. #565 at 7. Due to the pandemic, Miller and his fiancée's two minor daughters attend school remotely, and Miller's fiancée is experiencing difficulties caring for the children at home while attempting to find a job. *Ibid.* Miller's mother had previously performed childcare duties but contracted COVID-19 during the summer. *Ibid.* While Miller's mother has recovered from the virus, she can no longer assist with the children's care. *Ibid.* Miller's children are also experiencing their own health issues. *Id.* at 7-8; Doc. #565, Ex. A.

Miller was initially held at Cheshire because of state criminal charges. Doc. #576 at 2. In August 2020, Miller was transferred to the Donald W. Wyatt Detention Center ("Wyatt"). *Ibid.* He has been designated by the BOP to the Federal Correctional Institution Schuylkill ("FCI Schuylkill"). *Ibid.* On October 21, 2020, defense counsel informed the Court that Miller's wife had contacted Miller's counsel to state that Miller had contracted COVID-19 while in BOP custody. At this time, during which Wyatt was experiencing a COVID-19 outbreak, it was unclear where and in what facility Miller was located.

On October 29, 2020, I held a hearing to ascertain where Miller was located and whether he had COVID-19. Doc. #604. At the hearing, I learned that Miller was currently in Oklahoma at the Cimarron Correctional Facility ("Cimarron"), where he was transferred after leaving Wyatt. Miller stated that he has felt sick while at Cimarron. According to both Miller and the Government, Miller was in a cell with an individual who tested positive, and Miller was further quarantined as a result. I noted at the hearing that if Miller did not test positive for COVID-19, my inclination was to deny the motion for early release due to Miller's risk of recidivism. He

was given a COVID-19 test that same day, and the Government informed the Court that this test was negative.

Miller asserts that he was unable to comply with the statute's exhaustion requirement because he had been in state, rather than BOP, custody. Doc. #565 at 3. The Government notes that Miller did not mention anywhere in his motion that he attempted to file a motion with the warden at Cheshire or Wyatt, but agrees with Miller that because he has not been at a BOP facility, he cannot exhaust as directed by the statute. Doc. #576 at 3.

Miller's counsel submitted this motion for release on his behalf, seeking release based on his health condition and his family circumstances. Doc. #565. The Government opposes Miller's motion. Doc. #576.

## DISCUSSION

I will first review the statutory and regulatory framework that governs motions under 18 U.S.C. § 3582(c)(1)(A). Then I will address how these factors apply to this case.

### *Statutory framework*

Federal law allows a court to grant a "compassionate release" motion to reduce a federal prisoner's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Previously it was only the BOP that could file this kind of motion, but amidst widespread complaints about the failure of the BOP to file motions on prisoners' behalf, Congress amended the law with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), to allow prisoners the right to file their own motions for a sentence reduction if they first exhaust the statute's procedures for initially making a request to the warden to file a motion on their behalf. *See United States v. Brooker*, 976 F.3d 228, 231-34 (2d Cir. 2020).

Provided that a prisoner has satisfied the statute's exhaustion requirement, section 3582(c)(1)(A) establishes several criteria for a court to consider when deciding whether to grant the motion for a sentence reduction. First of all, there has to be no less than "extraordinary and compelling reasons" to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).[1]

A court must also "consider[] the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Therefore, a court must examine the same factors that it did when it initially sentenced the defendant, including the nature and circumstances of the crime, the defendant's history and characteristics, and the multiple purposes of sentencing, such as providing just punishment, deterring crime, protecting the public from further crimes by the defendant, and providing the defendant with rehabilitation. *See* 18 U.S.C. § 3553(a).

### *Factors applying to Michael Miller*

I first address whether Miller has shown "extraordinary and compelling reasons" that could warrant a sentence reduction. There is no doubt that the COVID-19 pandemic is extraordinary, having killed more than 250,000 people this year in the United States. But Miller has failed to show that his asthma condition places him at an appreciable risk of contracting COVID-19. As the Government notes, the Centers for Disease Control's current recommendations state that individuals with moderate to severe asthma "*might* be at an increased risk for severe illness from the virus that causes COVID-19,"[2] not that they are in the category of persons who "*will* be at an increased risk." *See, e.g.*, *United States v. Heaphy*, 2020 WL

---

[1] As an alternative to the existence of such "extraordinary and compelling reasons," section 3582(c)(1)(A) allows for motions to be filed by the BOP on behalf of prisoners who are at least 70 years old and have served at least 30 years in prison. 18 U.S.C. § 3582(c)(1)(A)(ii). This alternative is not at issue in this case.

[2] Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), "People with Certain Medical Conditions," last updated November 2, 2020, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/4QUK-735P] (emphasis added) (last accessed November 20, 2020).

5633285, at *3 (D. Conn. 2020) (noting that under CDC guidelines, even if the defendant "could establish he has moderate to severe asthma, it would only signify that [he] 'might be at an increased risk for severe illness from COVID-19'").

While it is concerning that Miller's cellmate at Cimarron tested positive for COVID-19, Miller himself has tested negative. Moreover, Miller is scheduled to be transferred to FCI Schuylkill, where current data shows that there are currently zero inmates and zero staff with COVID-19, with one inmate and five staff members having recovered from the virus.[3] All in all, Miller has not shown that the risk he may face from COVID-19 while imprisoned constitutes an extraordinary and compelling reason for his release from imprisonment.

Miller additionally seeks compassionate release due to changes in his family's circumstances as a result of the pandemic, as his fiancée is searching for a job while trying to care for their two daughters who are attending school remotely from home. The Government argues that Miller's family circumstances do not appear to meet the level required under the United States Sentencing Commission's Guidelines, Doc. #576 at 6-7, the commentary to which defines extraordinary and compelling family circumstances to include "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner," U.S.S.G. § 1B1.13, Appl. Note 1(C). However, the Second Circuit's recent decision in *United States v. Brooker*, made subsequent to the Government's filing, makes clear that district courts are free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," and that nothing in the "now-outdated version of

---

[3] *See* Federal Bureau of Prisons, COVID-19 cases, available at https://www.bop.gov/coronavirus [https://perma.cc/A7LQ-XBSS] (last accessed November 20, 2020).

Case 3:19-cr-00123-JAM   Document 614   Filed 11/20/20   Page 6 of 7

Guideline § 1B1.13[] limits the district court's discretion." *Brooker*, 976 F.3d at 237. Accordingly, I am not bound by the Guidelines' definition of extraordinary and compelling family circumstances.

Nevertheless, I agree with the Government that Miller's family circumstances, while certainly sympathetic, are not enough to warrant release. While Miller's fiancée certainly faces serious challenges in balancing searching for work and caring for the children, these challenges are similar to those many parents face during the COVID-19 pandemic and indeed, as the Government notes, similar to the challenges faced by any inmate with young children whose partner must work. *See Heaphy*, 2020 WL 5633285, at *4; Doc. #576 at 7 (citing *United States v. Shields*, 2019 WL 2359231, at *4-5 (N.D. Cal. 2019)). On balance, I find that Miller's health condition and his family circumstances do not amount to extraordinary and compelling circumstances.

I have also considered all of the sentencing factors under 18 U.S.C. § 3553. Miller pleaded guilty to conspiracy to distribute and to possess with intent to distribute heroin and cocaine. Even prior to his most recent conviction, Miller has a significant criminal history dating back to 1998—including multiple convictions for possession or sale of narcotics and multiple weapons-related convictions—that has "continued largely uninterrupted, but for periods of incarceration, since he was at least 16 years old." Doc. #255 at 15-20 (¶¶ 43-60), 31 (¶ 112). Prison does not appear to deter Miller from engaging in criminal activity whenever he has been released. Indeed, Miller has committed two escape violations while in state imprisonment and committed the instant offense while he was on escape status from a community release placement related to another conviction. *Id.* at 20-21 (¶¶ 61, 63). I am not convinced that if I release Miller on home confinement that he will follow the terms of his release or that he will

6

refrain from engaging in criminal activity. The purposes of sentencing—including just punishment, protection of the public, and deterrence—would not be well served by granting Miller an early release from imprisonment.

## CONCLUSION

For the reasons set forth above, the Court DENIES the motion of defendant Michael Miller for compassionate release. Doc. #565.

It is so ordered.

Dated at New Haven this 20th day of November 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge
